UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| UNITED STATES OF AMERICA, | Case No. 2:13-cr-00149-KJD-CWH |
|---|---|
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |
| v. | |
| THOMAS LEWIS, | |
| Defendant. | |

Before the Court is Defendant's Motion for Order Reducing Sentence or Modifying Judgment under 18 U.S.C. § 3582(c)(1)(A)(i) (#189). The government responded in opposition (#191) to which Defendant replied (#193).

I.  Factual and Procedural Background

On April 13, 2013, Defendant Thomas Lewis ("Lewis") robbed a bank. (#191, at 2). Lewis entered the bank alongside one of his co-defendants. Id. Both men wore multiple layers of clothing, including masks, as they walked into the bank, guns in hand. Id. Lewis's co-defendant jumped over the counter and demanded that everyone "get down and not move." The men fled the bank with over $16,000. Id. Eventually, Lewis and his co-defendants were apprehended and arrested. Id. On March 26, 2014, Lewis's trial began. Id. On the second day of trial, Lewis pleaded guilty. The Court sentenced Lewis to 57 months in prison for the bank robbery and a consecutive 84 months for the weapons charge, for a total of 141 months. Id. at 3. Lewis received two additional points on his Criminal History Category because he was under sentence when he committed this offense. Id. Only three out of Lewis's 13 prior convictions added other points to his Criminal History Category because the other convictions fell outside of the fifteen-year applicable time period under U.S.S.G. §§ 4A1.2(e)(1), (3). (#193, at 5). Lewis's past convictions include battery upon a police officer, driving under the influence and causing bodily

injury, possession of a firearm by a felon, driving under the influence without causing bodily injury, and multiple misdemeanors for traffic violations, possession of open alcohol containers and illegal fireworks, and failure to appear.

On May 27, 2020, Lewis applied for compassionate release with the warden of FCI Victorville, Medium I where he is incarcerated. (#189, at 9). Lewis did not receive a response from the warden and filed this motion on July 17, 2020. Id. at 9, 37. The government opposes Lewis's release because he has served only about 65% of his sentence and has not proven that he is no longer a danger to the public. (#191, at 3).

## II.    Legal Standard

The district court that imposed sentence on a criminal defendant has authority to modify the term of imprisonment under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). That statute provides, in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that […]extraordinary and compelling reasons warrant such a reduction […] and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. §§ 3582(c)(1)(A), 3582(c)(1)(A)(i).

If the defendant has exhausted administrative remedies, the analysis is twofold. First, the Court must consider the same factors applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable at the time the motion is brought. 18 U.S.C. § 3582(c)(1)(A). Second, the Court must find "extraordinary and compelling reasons" to release a defendant from Bureau of Prisons ("BOP") custody in a policy statement. Id.

III.     Analysis

The Court is aware that Defendant is at some increased risk of COVID-19. However, Defendant has not met his burden to establish that he is no longer a danger to the public. While Defendant argues that his previous convictions are stale and did not count toward his sentencing range, criminal history is an indicator of potential danger to the public. The factors to determine danger to the community when considering release of a defendant pending trial are helpful here. Those factors include

    (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
    (2) the weight of the evidence against the person;
    (3) the history and characteristics of the person, including
    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
    (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). The Court is impressed by Defendant's ability so far to avoid any disciplinary infractions while incarcerated. However, the factors weigh in favor of a finding that Defendant poses a danger to the community.

The nature of the crime is serious. To show he is not a danger to the public, Defendant argues that no shots were fired when he robbed the bank and the stolen money was recovered. However, Defendant and his co-defendant entered the bank with guns and masks, jumped over the counter, and told everyone to get down and not move. That statement is easily interpreted as a death threat to those in the bank. This crime of violence impacted people in a way that could not be alleviated by recovery of the stolen money. Lewis's criminal history also weighs against release. Lewis has assaulted a police officer, caused harm while driving under the influence, failed to appear, and illegally possessed weapons, among other convictions. Lewis's argument that home confinement would compensate for any potential danger he poses to the public fails because Lewis was under sentence when he committed the instant offense. Lewis's past does not

- 3 -

provide evidence that a sentence including home confinement or supervised release is sufficient to deter his criminal behavior. Lewis has not met his burden to show that he would not pose a danger to the public if he were to be released. Therefore, his motion is denied.

Additionally, the Bureau of Prisons ("BOP") has made great strides in protecting prisoners from COVID-19. The BOP has suspended all visitations while adding phone time for inmates, limited movement to prevent congregations, performed COVID-19 screenings for all new intakes, and suspended all staff training and travel. BOP MODIFIED OPERATIONS, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Jan. 27, 2021). The BOP has also emphasized home confinement, even without judicial interference, for those at high risk and has "significantly increased its placement of offenders on home confinement." FREQUENTLY ASKED QUESTIONS REGARDING POTENTIAL INMATE HOME CONFINEMENT IN RESPONSE TO THE COVID-19 PANDEMIC, https://www.bop.gov/coronavirus/faq.jsp#:~:text=Since%20the%20release%20of%20the,of%20offenders%20on%20home%20confinement (las visited Jan. 27, 2021). Finally, the BOP has begun vaccinating both staff and inmates and "leads all jurisdictions and Federal entities in its rate of vaccination utilization." COVID-19 VACCINATION EFFORTS COMMENDED, https://www.bop.gov/resources/news/20210116_covid_vaccine_efforts_commended.jsp (last visited Jan. 27, 2021). As a result of these measures, FCI Victorville Medium I, the facility in which Lewis is housed, has seen only two inmate deaths from COVID-19 out of 989 total inmates. FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Jan. 27, 2021). The BOP has taken measures to protect inmates and there is no indication that Lewis would be any more protected if he were released as COVID-19 continues to spread. See generally Amy Goldstein, Isaac Stanley-Becker, and Lauren Meckler, Biden Says Death Toll from Pandemic Likely will top 500,000 Next Month, Says it will Take Months 'For us to Turn Things Around", WASHINGTON POST (Jan. 21, 2021) https://www.washingtonpost.com/health/biden-coronavirus-executive-actions/2021/01/21/9a4ab954-5b56-11eb-8bcf-3877871c819d_story.html (explaining President Biden's concerns that our efforts to thwart the virus will take months to make an impact).

Having considered the relevant factors, the Court finds that Lewis should serve the full sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a). Therefore, Lewis's motion is denied.

IV.     Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Order Reducing Sentence or Modifying Judgment (#189) is **DENIED**.

Dated this 28th day of January, 2021.

_____
Kent J. Dawson
United States District Judge